Good morning. We have four appeals that are scheduled for oral argument this morning. The first is Eric Rudolph v. United States. Deanna Lee Oswald is here for the appellant Rudolph and Matthew Dodge is also here for Rudolph. And Gabriel Mendel is here for the Good morning and may it please the court. I will be addressing the collateral attack waiver and my colleague Mr. Dodge will address procedural default. The government knows the difference between a conviction and a sentence and listed both in Mr. Rudolph's direct appeal waiver. The collateral attack waiver, however, means only the sentence. Mr. Rudolph claims that his 924C convictions are no longer valid, are not barred by that waiver. The label on the motion under 2255 doesn't change the nature of Mr. Rudolph's claim or transform it into an attack on a sentence. So I get your point that I think in Davis v. United States I think the Supreme Court said that you can attack a conviction or a sentence, but what about your client's particular motion, which is an amended motion to vacate, set aside, or that this is an attack on his sentence, even if you're calling it an attack on his conviction? Because the label of the motion shouldn't control. It's the nature of the claim being brought, which is an attack on his 2255 conviction, especially in the case of a pro se defendant who's filing a post-conviction motion. The court should look to its function, not its be satisfied if his conviction were simply vacated and that was it? I'm not sure I understand the question. Well, because he would still be in prison for life on numerous other charges, which I expect is why you asked for all of these changes related to his sentence. That's correct, Your Honor. Well, in his pro se motion, the relief that he requests is for all of the sentence to be vacated, but it's true that he is still serving a life sentence on counts that are not at issue here, and so his claims do not necessarily affect those other counts. Well, right, but the fact that I understand your point about the label not mattering, but what about the ultimate relief that you're specifically asking for? Why doesn't that I understand, Your Honor, because that is attached to the type of claim at issue. The claim that he has brought is an attack on his 924C convictions, not an attack on his sentence. He's not attacking the process by which the sentences were imposed or saying that there was something unlawful about how the sentence was imposed. He's saying that his 924C convictions are not valid. That's the claim being brought. It's not an attack on his sentence generally. Can you attack a conviction under 2255 if you are not serving a sentence under that conviction? No, Your Honor. That goes to the issue of the jurisdiction of the court because it is 2255 was intended to replace the writ of habeas corpus as relates to federal prisoners. So it says a prisoner in custody under sentence of a court claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, yada, yada, yada, they use the sentence like six more times. Isn't it, I mean, isn't it just that 2255 only lets you challenge a sentence? No, Your Honor. The Supreme Court has already decided that question. In the 1974 case, United I see that I've run out of time, but I would like to answer the court's question. You can finish your answer. Thank you. In that case, the court decided that 2255 is a general vehicle for attacking either a conviction or a sentence, and the court's decision did not rest on the nature of the claim being brought, nor did it rest on the particular language that's used in 2255. It instead looked at the remedy section, the fact that 2255 entitles a prisoner to attack a judgment generally, and said that this is a vehicle for prisoners to do either. The label that it gives the motion doesn't change the nature of the claim. Thank you. Thank you. Counsel, you've reserved some time for rebuttal. We'll hear from Mr. Dodge. Thank you very much. May it please the Court. The government must live with the choices it made. It chose the text in that plea agreement, it chose the charges in the indictment, and it chose not to raise procedural default. Under the law, this court must hold the government to those choices. Mr. Rudolph's procedural default must be excused for two reasons. First, the government waived the defense, and secondly, he is actually innocent of the 924C offenses. I'd like to jump to that one. On a lot of circumstances, we are, I would say, consigned to use the categorical approach, but when we're thinking about whether Mr. Rudolph is actually innocent, why, what in the text of the statute makes us say someone who was convicted of these violations theoretically could have been actually innocent once we have Davis? Why do we do it that way, given that statutory language? The text of 924C includes several elements, one of which is a crime of violence. After is no longer a crime of violence. That element has evaporated, and so as this Court held in Granda a couple years ago, a defendant can prove innocence of a 924C offense after Davis if no reasonable juror could convict based on a valid predicate. We have no valid predicate here, so this is actual innocence. The Fourth Circuit recently did the very same thing in McKinney. So setting aside the conduct that Mr. Rudolph committed in this collection of crimes, he did not commit 924C and he is innocent of that crime. But, I mean, as a technical matter, yes, but as a factual, actual matter, he committed arson against someone else's property, not his own, right? And so that would be a violent crime. And so I don't see why when we're looking at actual innocence rather than technical innocence, we wouldn't be able to consider conduct in a way that we're usually not able to. Well, here, under the categorical approach, as you mentioned a moment ago, Judge Grant, we have to look at the broadest possible conduct. And here, because an arson can be committed against Mr. Rudolph's own property, whether he did that or not, the crime doesn't count as a crime of violence. But do we have a Supreme Court case telling us that's how we should do it in this context? We don't have a Supreme Court case in this context other than Davis. I think Davis does offer us that message. In Davis, the Supreme Court said that the 924C based on conspiracy to commit Hobbs Act robbery is invalid because that crime is not a crime of violence anymore and remanded for the Fifth Circuit to vacate the 924C crime. And this Court did the same in Granda. Well, it said the same in Granda. It said that if Mr. Granda's 924C had only been based on conspiracy, then he would have shown innocence. But there, because the... But I think the point there, though, is that conspiracy isn't actually a violent crime because you haven't done anything violent, whereas committing malicious, acting with malicious intent and committing arson on someone else's property is, in reality, a violent crime. Isn't that an important difference between those two? No, Your Honor, because 844I, this crime of arson, is categorically not a crime of violence. And that is true both for the property disparity and also now for the mental state of recklessness after Borden. And I don't believe the government even disputes that 844I is no longer a crime of violence and that we've proved innocence on the 924C counts. How do you get around the Supreme Court's decision in Boosley versus the United States where the court said that when the government forgoes more serious charges during the plea bargaining, the petitioner's showing of actual innocence must extend to those charges, too? And he did forgo more serious charges in this case, so he would have to show that he's actually innocent of those charges as well in order to rely on actual innocence. Is that right? No, Your Honor. I don't share that perspective. Here, there were no more serious charges in the Georgia indictment. There were merely equally serious charges. The three comparators used by the district court were counts 1, 3, and 19. Those carried only life in prison for Mr. Rudolph, which is equal to the 924C, not more serious. In this unique context, the statutes do permit death, but only in those circumstances where the government crosses a couple of bridges first to activate that stat max. The government must provide death notice under 3593. It didn't do that here. The government must ask the grand jury to include death findings in the indictment under 3592. It didn't do that in the Georgia indictment either. Because the government did not cross those two bridges, the statutory maximum was never life for Mr. Rudolph in the Georgia indictment. And the court has to limit itself to the four corners of that indictment. We can't ask what, hypothetically, the government might have done in a different world. Here, the government never indicted death. That was never the statutory maximum, and therefore, we need not prove innocence of those other charges. Didn't Bowsley itself, though, rely on charges that were equally serious rather than more serious? No, Your Honor. In Bowsley, the government asked for permission by the Supreme Court on remand to go back and prove up the carrying version 924C, and the Supreme Court didn't let it do that. It said no. There's no information here to suggest you were going to charge that anyway. The bottom line is the rationale of Bowsley, we don't know what the court's purpose was. We only know what the court wrote into that opinion. It gave us the standard, more serious charges. On a statute, right? If the statute said more serious charges, then I think that's game over for the government's position on this. But we don't read Supreme Court opinions like statutes, do we? Well, here, the court ought to read this like a statute. We ought to take the Supreme Court at its word and assume that the court meant what it said and said what it meant. The Supreme Court has never revised that standard in the 25 years since Bowsley. This Court has applied that more serious charges standard end stop since Bowsley, both in Jones in 99 and in Montano in 2005. The Court, the panel, was looking at a Bowsley issue and used the phrase more serious charges and enforced that standard only. Three circuits have rejected the government's efforts to expand or rewrite Bowsley to include equally serious charges. The 3rd, 5th, and the 8th have declined that invitation, and this Court should do the same. The district court below legally erred by applying an equally serious charges standard. Now, the Court shouldn't have done that. The standard is what the Supreme Court says it is, and Federal courts have to follow that until the Supreme Court revises its own standard. It lets the Court worry that there's some sort of other case on the other side. The U.S. Attorney's office designated Mr. Mandel to litigate all of the 2255 motions based on Davis. He wrote dozens of these motions before, during, and after the Rudolph case. He had his eyes wide open on the collection of potential defenses that he could raise in challenging any of our motions. In this case, of all cases, he was an expert. And in this case, of all cases, the government was on high alert. This is the Centennial Olympic bombing case. Here, the government would surely curate and choose every single defense that it could to push back on the motion. The government's waiver of procedural default must be enforced. Unless the Court has more questions about actual innocence, I would like to talk a little bit about waiver. Well, your time is up. Yes, sir. Yes, sir. Okay. Thank you very much, Your Honors. Mr. Mandel. Good morning. May it please the Court, Gabriel Mandel for the United States. To avoid the death penalty for murdering two people and injuring and terrorizing countless others, Mr. Rudolph negotiated plea agreements in Alabama and here in Georgia. And in exchange for the government foregoing the death penalty and dismissing certain charges, Mr. Rudolph pled guilty to other charges, and he agreed to waive his right to collaterally attack his sentence. It may be it's a tough issue for us as far as Alabama or as far as Georgia is concerned. But as far as Alabama, where the Court didn't rely on procedural default, I'm not sure you're able to get around the text and the plain language of the plea agreement. It clearly says he does not waive his right to collaterally attack his convictions. Your Honor, we embrace the language of the plea waiver. We agree that it says exactly what it says, and we're not asking this Court to construe it to say anything else. It says he waives his right to collaterally attack his sentence. That is what he has done. He has brought two motions under 28 U.S.C. Section 2255, which is the statute, plain language of the statute. The title, Remedies on Motions Attacking Statute, excuse me, Attacking Sentence. And then the text of 2255A. It allows a defendant and a prisoner to challenge a sentence that he is currently serving, and it lists several ways he can attack that sentence. He can attack that sentence by saying it violates the Constitution or the laws of the United States, or the district court didn't have jurisdiction to oppose that sentence, or the sentence exceeds the maximum authorized by the statute. But each of those necessarily is an attack on a sentence. Now, my colleagues are right. One of the ways that you can attack your sentence — In his plea agreement, did he waive his right to collaterally attack his convictions? No, Your Honor. He waived his right to collaterally attack his sentence, which a 2255 motion always does. So the government didn't forget accidentally this important issue that, oh, he'll be able to bring some 2255s and not others. He waived his right to collaterally attack his sentence, but did he waive his right to collaterally attack his convictions according to the plain language of the plea agreement? No, Your Honor. But that is not what he has done. What he has done is brought a motion under 20. If he had brought a writ of quorum nobis, he had already served his sentence, he's out of custody, and he comes to the district court and says, I want to challenge my conviction, we might not be able to raise the plea. Your argument, then, is he's not challenging his — he's not collaterally challenging his conviction? Our argument, Your Honor, is that his motions collaterally attack his sentence, and the way he is doing that under 2255A is saying that the conviction those sentences are based on are invalid. So some 2255s attack the sentence by attacking the conviction. That's what he has done. Some 2255s, like a Johnson motion, attack the sentence alone. They don't argue that the felon in possession conviction is improper, just that the 924E enhancement is improper. But every 2255 motion requires that the prisoner collaterally attack his sentence. That's why the statute says what it says, and that's why his motions say what they say. It's not just the caption of his motion. And let's be clear. It's not the pro se motions. The amended motions filed by these attorneys are captions, motions to vacate the sentence, and they say things in the text, not just the title, like the sentence is unlawful. The sentence was imposed in due process of law. So he's making the wrong argument in his petition. I'm sorry, Your Honor. Your position is that he made the wrong argument in his petition. No, Your Honor. He made the right argument. It's the only argument he could make. But he waived the right to do so as part of his bargain for plea agreement. How is this consistent in your view with Davis v. United States? Because, again, Your Honor, in Davis, so if Mr. Rudolph could only collaterally attack his sentence and had to point out some error in the sentence without talking about his conviction, he wouldn't be able to bring a claim at all because he agrees there's nothing wrong once you've been convicted of a 924C of the way the court imposed sentence. So what Davis v. United States allows a defendant to do is one of the issues he can raise with his sentence is that it's based on an invalid conviction. But you still have to be serving that sentence and alleging that there's something wrong with that sentence to state a valid 2255A claim. Otherwise, you just haven't stated a claim at all. We see other plea agreements that that bar challenges under 2255 to the conviction and the sentence. Are those agreements an error or just trying to avoid this argument? Why do you think we see that a lot? I think there's two answers, Your Honor. One is belt and suspenders. I wouldn't even have to be here responding to this argument if we had done that in this case. The other is, to Judge Wilson's question, there are ways to collaterally attack a conviction that are not 2255 motions. Arguably, Mr. Rudolph wouldn't be prohibited from bringing those given the text of his plea agreement. He'll have to get out of custody first, but that would be the other reason why that language is not superfluous, even if the belt and suspenders isn't enough reason for the government to add and add and add language to our plea agreements. Question about that. Is this plea agreement unusual or different from, like, the standard appeal waiver that we see all the time? I mean, I'm just trying to figure out what effect a decision would have on those. I think I can only speak from my office and my personal knowledge of our historical practices. In this era, that plea waiver was the standard template. In time since, as Judge Grant's question alluded to, we have, I think, ordinarily added collateral attacks on convictions as well. But Mr. Rudolph made a very straightforward promise, which was consistent with the text of 2255, and all you have to do is, in addition to look at the text of 2255, look at his motions and look at the relief he's seeking. And if that's not enough, look at this Court's decision in King v. United States from last July, where this Court held that these types of plea waivers are enforceable. And the way this Court described a Davis claim, which is the exact same claim that Mr. Rudolph has brought, it describes it as a, quote, challenge to the sentence. And the conclusion of this Court's opinion in King reads as follows, quote, a defendant that waives the right to collaterally attack his sentence is bound by that decision. King's Davis claim is no exception, and neither is Mr. Rudolph's. So the District Courts did not. So what makes this case different from the Tenth Circuit's decision in United States v. Chapman and United States v. Lomeli? Your Honor, the Tenth Circuit, likely due to the way the parties framed or, with due respect, misframed the issue, the Tenth Circuit started with an undisputed premise and a faulty premise that a Davis 2255 is a challenge on a conviction. And then the issue before the Court was, given the plea waiver that says only waives collateral attacks on convictions, can that language be read expansively to also bar attacks on convictions? And the Tenth Circuit said, no, this is plain language. We don't take issue with that. What this Court has to decide, though, is that faulty premise that was assumed and never argued and never decided by the Tenth Circuit. What is the nature of this defendant's claims? And because they are both in function and in form collateral attacks on his sentence, they fit squarely under his plea waiver, and the District Courts' decision to deny them should be affirmed. I'd like to move to procedural default unless there's further questions on waiver. And there appears to be no debate that Mr. Rudolph has procedurally defaulted. This Court's decision in Granum makes that clear. So he's now trying to travel through what this Court has described as the exceedingly narrow route of actual innocence. And as the Court's questions evidence, his primary problem there is that he cannot show that he is actually innocent of the charges that the government dismissed in exchange. And I'd like to address two points. One is a factual error that was made by my colleague, which is to argue that the Georgia indictment did not require the government to forego more serious charges. It absolutely did. It required the government in Alabama to withdraw the death penalty notice. That is a part of his Georgia plea agreement. It is also a part of his Georgia plea agreement that the United States Attorney's Office promised not to bring a death penalty notice in that case. So this Court doesn't have to speculate about what charges the government might have brought, but for this plea, it's in the plea agreement itself. The government parties agree that death is more serious. I mean, frankly, that's the entire benefit of the bargain that Mr. Rudolph got here. That's the whole basis of his plea. He avoided death and the more serious punishment of death in exchange for his plea. What's your response to my questions to your friends on the other side about actual innocence versus kind of this It's a difficult question, Your Honor, and I would love some clarity for the Supreme Court. As I understand the government's position, it's this. The question should be, could a reasonable jury find him guilty of that offense today? And the answer is no, because that is not a valid predicate for that crime. So no matter what facts, and the facts are undisputed. They're part of the plea agreement. No matter what facts, and no matter how violent his actions clearly were, no reasonable jury could find him guilty because it's no longer a valid offense. I guess that's when you put it that way, that sounds right, although that's, to me, inconsistent with the standards set out in Bousley. It's important to note in this regard that actual innocence means factual innocence, not mere legal insufficiency. I don't disagree, Your Honor. That's the best that we've come up with, but it's clearly an area that's uncertain. The good news for the Court is it doesn't have to decide that here because Bousley is clear that he, in this case, has to prove his innocence of charges that he's admitted his guilt of. I would also submit that equally serious charges do suffice, though, again, the Court doesn't have to decide that. This Court looks at its own precedent in Montana where it applied Bousley. In that case, the defendant was charged with four drug trafficking offenses under 841 and a single 924C. He pled guilty to one 841 and the 924C. And then later he brought a collateral attack on the 924C. The government said, you've procedurally defaulted. The defendant said, aha, I'm actually innocent of the 924C. And this Court said, hold on. You need to prove you're actually innocent, not just of the 924C, but those 841 offenses. Well, there's no basis to argue that 841 is a more serious offense. It is, at best, an equally serious offense. And so this Court, though it didn't reason through the distinction, held the defendant to that burden. And I think the D.C. Circuit decision in CASA lays out pretty nicely why equally serious makes the most sense. Because the idea of Bousley is, we might excuse your procedural default if you're actually innocent, but we're not going to reward you for it. We're not going to reward you for failing to raise this claim at a time when the government could have substituted other charges or could have simply taken you to trial and sought to put you to death by now letting you out on the one charge you agreed to plead guilty to. And so that reasoning applies whether they're more serious or equally serious, because at the time the government could have simply submitted one of the other charges that were dismissed. Can I ask you a quick question about this, just the way that we would get to this argument? I mean, it's my understanding that the Northern District of Alabama ruled entirely based on the waiver and the plea agreement. The Northern District of Georgia added this argument. If you lose on the I think, Your Honor, in the same way that the district court in Georgia had the power to order supplemental briefing, this court could do the same. It could not rule on procedural default in the Alabama case without giving Mr. Rudolph an opportunity to respond. I think most appropriately you would remand to the district court as the court of first impression to see if the court or the government wanted to raise that issue. And I'll speak briefly about the idea of waiver versus forfeiture. Here, what the record shows is that the government was silent on procedural default in its initial response, inadvertently omitted it. And therefore, under this court's precedent in Campbell, that's not waiver, that's forfeiture. And under Day and Burgess, the district court has the discretion to inquire, do the parties want to brief this issue? And at that point, the government could have waived it if it intended to. I think Mr. Dodge points out, well, this of all cases, why would they have forgotten this? Well, that works both ways. In this of all cases, why would we have waived procedural default when we raised it against all these other less notorious defendants? But it doesn't really matter because the record is what it is, and the record shows nothing but silence. To the extent that the government raised it in other cases, it raised it alongside plea waivers. Either we forewent our affirmative defenses or we raised them. Here, we raised them but inadvertently omitted procedural default. The district court had discretion to raise it, gave Mr. Rudolph an opportunity to brief it, and then on the basis of that full briefing, did not abuse its discretion in denying his motions on that alternate basis. For those reasons, we ask that the district court orders be affirmed. Thank you. Thank you, Mr. Mandel. We'll hear from Ms. Oswald. The government's claim is that Mr. Rudolph's claim, which would be considered an attack on a conviction in any other context because it's traveling by way of 22-5, becomes an attack on a sentence. But that is not consistent with the nature of 22-55, which allows attacks on judgments generally. And it's not consistent with the plea agreement, which refers to all post-conviction motions, not just 22-55. If the parties intended a 22-55 specific meaning of sentence, then it would have specified so in the plea agreement. But the fact that they used sentence in the context of any post-conviction motion suggests that they intended a general use of the term sentence. And we ask the district court be reversed. Thank you. Thank you, counsel. Mr. Dodge. Mr. Dodge. So the government discussed waiver and you didn't have an opportunity to talk about it during your initial argument. You might want to spend some time on that issue. Yes, sir. The government just told you, quote, the record shows nothing but silence, unquote. That's not true. A brief timeline will make that plain. In August 2020, I filed an amended motion, and I said in that motion, none of the possible defenses to a Davis claim, including procedural default, should bar relief here. A month later in September, the government filed its global response to the motion and curated three distinct defenses. Didn't say a word about procedural default. And then I noted on page one, the government has failed to mention or rely on procedural default and thereby has conceded the point. Boom. At that point, the waiver was effective. And that means that the district court later was barred from relying on that defense to deny our motion. The government showed through its conduct over the next year after October 2020 that its choice to not raise procedural default was intentional. By December of 2020, the government filed a joint motion to stay the petition pending the Borden decision in the Supreme Court. And the government wrote in that motion Why would it be any different in a 2255 case from a 2254 case to distinguish this from Esslinger v. Davis? I'm sorry, Your Honor. I couldn't quite hear your question. Well, we said that the court could raise a procedural bar to relief that the state has waived in a 2254 case in Esslinger v. Davis. Why can't we extend that holding in Esslinger to a 2255 case? Because Wood v. Milliard arrived years after. In Wood v. Milliard, the Supreme Court said, if the government or any party intentionally waives a defense, the district court is prohibited, has no authority to invoke that later in the face of that bypass. Here, we have to remember that the litigant who's asking the court to overlook its sins is the United States of America, who Judge Newsom and Campbell described as the most powerful, best-funded, most well-represented litigant who appears in front of this court. The government knew what it was doing when it chose not to raise procedural default, and the court must leave. Wasn't he in dissent in that case? Yes. And didn't we find forfeiture rather than waiver in the majority? Exactly, Your Honor. Yes. And in Campbell, we have a true waiver where the government simply stood silent in front of this court in its initial brief. It failed to raise good faith. But all the other circumstances around that silence in Campbell showed that that was accidental. The U.S. Attorney's Office in Campbell had raised good faith, litigated it, briefed it in the district court. They were clearly invested in that defense, and it was an oversight. Here, we have the government's silence on procedural default bracketed by two cues. I was practically picketing the courthouse talking about procedural default, and the government stood silent month after month in the face of nothing. It intended to weigh the defense, and under Wood v. Milliard, no court is allowed to enforce it now. All right. We have your argument. Thank you, Mr. Dodge. Thank you, Counsel.